| | | |
|---|---|---|
| VINCENT TREVIZO, | ) | |
| | ) | |
| Petitioner, | ) | No. 12 C 09399 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| JOSEPH YURKOVICH, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Vincent Trevizo has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254,[1] challenging his 2003 convictions for first-degree murder, concealment of a homicidal death, and aggravated arson. Trevizo raises six claims in support of the petition: 1) that he was denied the right to testify; 2) that he was denied the right to a trial by jury; 3) that he was denied the right to an impartial judge; 4) that he was denied effective assistance of counsel; 5) that the evidence was insufficient to support his conviction; and 6) that he was denied his constitutional right to meaningful access to the court and due process of law. For the reasons that follow, Trevizo's petition is denied. His request for an evidentiary hearing is also denied, because factual disputes can be resolved by consulting the state record. And because reasonable jurists would not debate this petition's denial, no certificate of appealability will issue.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 2241. Citations to the docket are indicated by "R." followed by the docket entry.

# I. Background

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Trevizo has not provided clear and convincing evidence to rebut the presumption of correctness here, so this factual background is taken from the state courts' findings.

## A. Summary of the Crime

On the morning of September 3, 2000, firefighters responded to a fire call at Melissa Plut's apartment. R. 18-1, Exh. A, Order on Direct Appeal, *People v. Trevizo*, No. 2-03-0754, slip op. at 2 (Ill. App. Ct. May 18, 2006). After extinguishing a fire burning on the second floor of the apartment, firefighters discovered Melissa Plut's body on the same floor. *Id.* And after discovering gasoline and a trail of matches and paper towels leading from the first floor to the second floor, the fire was determined to be the result of arson. *Id.* at 18. An autopsy revealed that Plut died as a result of strangulation and that the fire was not a contributing factor to her death. *Id.* at 8. Plut also had a stab wound and other small lacerations that were probably inflicted after her death. *Id.*

On September 26, 2000, employees of a fire restoration company hired to salvage and inventory Plut's personal items recovered a vacuum cleaner in the front entryway of Plut's apartment. *Id.* at 11. Plut's blood stains were found on the vacuum cleaner. *Id.* at 19. A bloody sock was also found stuffed in the vacuum

cleaner; it appeared that the bloody sock may have clogged the vacuum cleaner belt and caused it to break. *Id.* at 12.

On May 7, 2001, the State charged Trevizo, Plut's next-door neighbor, by indictment with two counts of first-degree murder, one count of concealment of a homicidal death, one count of aggravated arson, and one count of residential arson. R. 18-7, Exh. G, Order on Postconviction Appeal, *People v. Trevizo*, No. 2-10-0554, slip op. ¶ 3 (Ill. App. Ct. May 29, 2012). The indictment alleged that Trevizo strangled Plut to death and then set fire to Plut's apartment while her body remained inside. *Id.*

## B. Pre-Trial Procedure

On May 16, 2001, Trevizo was arraigned by the trial court and instructed as follows:

> You have the right to choose whether your trial is held in front of a judge or in front of a jury. You have the right in this matter to persist in a not guilty plea throughout the proceedings without testifying in this matter. No one can force you to testify. You can testify if you choose, but you cannot be forced to testify because of your privilege against self-incrimination.

*Id.* ¶ 4. When Trevizo was asked if he understood his rights, he responded, "Yes, your honor," and then pleaded not guilty. *Id.*

In the following months, Trevizo exercised his right to substitute the trial court judge twice, *id.* ¶ 5, thereby exhausting his right to substitute the trial court judge without a showing of cause, Habeas Pet. ¶ 68. On August 8, 2001, the judge who presided over the remaining proceedings, Judge Wojtecki, made the following disclosure:

I don't think it matters, but first of all, I know [Trevizo's attorney, Tom Breen]. We were prosecutors together in the Cook County State's Attorneys Office and I consider [Breen] a friend. I don't think that's cause for recusal. Secondly, I want to tell you, [Breen], when I was in the public defender's office here doing some felony cases, this murder came up and I thought our office was going to be on it, I wasn't sure, so I went down and I talked to the State's Attorneys about the case. It was before anybody was ever arrested. Only thing I wanted to know was whether or not we might get it and I can tell you all that I recall—what I recall is that there was a homicide in Joliet, there was a fire, someone was burned to death, a woman, and the State I think thought the boyfriend did it and that's all I remember. That's all I discussed. . . . I don't know anything about this case. I don't even know who the defendant is. . . . I wanted to tell you that. I probably would have learned more from the newspaper, I guess.

*Id.* ¶ 5. The following colloquy occurred shortly after Judge Wojtecki's disclosure:

MS. FLETCHER [Assistant State's Attorney]: You're not going to tell him I have your cat?

THE COURT: She has my cat.

MR. BREEN [Defendant's Attorney]: I don't want to know the story behind that, judge.

MS. FLETCHER: He got it from me originally.

THE COURT: She has my cat and I paid cat support for a while but I'm not anymore. Does that matter?

MR. BREEN: No.

*Id.* On September 19, 2002, the court questioned Trevizo about whether anyone forced him to sign a written waiver of jury trial, and whether he was under the influence of medication, drugs, or alcohol. *Id.* ¶ 6. Trevizo answered in the negative to each question. *Id.* The court then asked if he understood that the waiver could only be undone in certain limited situations and that as a general matter he could

not change his mind. *Id.* After Trevizo responded, "I understand, your Honor," the court found that Trevizo freely and voluntarily executed the jury waiver. *Id.*

### C. The Trial

During a week-long bench trial, Trevizo and the State called more than fifty witnesses to testify. Order on Direct Appeal at 2. Some of Plut's and Trevizo's neighbors testified that the last time they saw Plut alive was at approximately 1:00 a.m. the night before her death, when she and Trevizo were chatting in Trevizo's driveway. *Id.* at 5, 15, 23. The State then called witnesses to testify to Trevizo's varying accounts to the witnesses about whether he saw Plut the night before her death. *Id.* at 6, 7, 10, 12. One witness also testified that before Plut's cause of death was determined by autopsy—and so before this information was released to the public—Trevizo had informed the witness that Plut was murdered by strangulation. *Id.* at 25. Finally, the State presented evidence that three of Trevizo's toe prints were found on the vacuum cleaner that was stained with Plut's blood, and in which the bloody sock was found. *Id.* at 11, 17. One of Trevizo's fingerprints was also found on Plut's front door. *Id.*

After the trial, the court found Trevizo guilty of one count each of first-degree murder, concealment of homicidal death, and aggravated arson. *Id.* at 21. Trevizo was sentenced to forty-five years imprisonment. *Id.*

### D. Post-Trial Procedure

On direct appeal in state court, Trevizo raised two claims: 1) insufficient evidence to prove him guilty; and 2) a new trial was warranted because he should

have been permitted to admit polygraph evidence regarding another suspect. R. 18-2, Exh. B, Pet'r's Br. on Direct Appeal at 46, 67. On May 18, 2006, the Appellate Court of Illinois affirmed Trevizo's conviction. Order on Direct Appeal at 1. The Appellate Court held that it was reasonable for the trial judge to conclude that there was sufficient evidence to convict Trevizo, *id.* at 23: the State's evidence supported reasonable inferences that Trevizo (a) had an opportunity to commit the crime due to his proximity in time and location to the crime, (b) displayed knowledge of a detail about the crime before it was publicly announced, (c) demonstrated a guilty conscience as he changed his account of when he last saw Plut, and (d) was present during the time of the crime as evidenced by his toe prints on a vacuum cleaner that might have been used to try to cover up the crime. *Id.* at 25. Trevizo's petition for leave to appeal (PLA) on direct appeal was denied by the Supreme Court of Illinois on September 27, 2006. R. 18-6, Exh. F, Order Denying Pet. for Leave to Appeal.

Trevizo filed his petition for state postconviction relief on July 26, 2007. Order on Postconviction Appeal ¶ 8. In his petition for postconviction relief, Trevizo raised seven claims: 1) that he was denied his right to testify at trial; 2) that he did not knowingly waive his right to a jury trial; 3) that Judge Wojtecki was biased and should have recused himself; 4) that he did not know he could move to substitute the trial judge for cause; 5) that there was prosecutorial misconduct because the State allegedly failed to disclose materials in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and presented false testimony; 6) that he was denied effective

assistance of trial counsel; and 7) that there was insufficient evidence to prove him guilty. *Id.*

On June 26, 2009, the trial court granted the State's motion to dismiss claims 3 (judicial bias), 5 (prosecutorial misconduct), and 7 (insufficiency of the evidence) in part because they were allegations that could have been raised on direct appeal, or had already been considered on direct appeal. *Id.* ¶ 9.

An evidentiary hearing was held on November 2, 2009 to consider Trevizo's remaining claims. *Id.* ¶ 10. During the hearing, the trial court considered the testimony of Trevizo, his wife (Kelly Trevizo), his mother (Carolyn Trevizo), his father (David Trevizo), his uncle (Raul Ramirez), and both of his previous trial attorneys (Tom Breen and Todd Pugh). *Id.*

On January 29, 2010, the trial court denied Trevizo's petition for postconviction relief on all remaining claims. R. 18-8, Exh. H, Order Denying Postconviction Petition, App. to Pet. Br. on Postconviction Appeal. The trial court found Breen and Pugh to be more credible witnesses, and thus held that 1) Breen and Pugh adequately discussed the right to testify with Trevizo; 2) Trevizo was adequately admonished by the court when he exercised his written jury waiver; 3) Breen and Pugh did not unreasonably fail to discuss filing a motion to substitute Judge Wojtecki for cause; and 4) Trevizo received "excellent representation at trial" from Breen and Pugh. *Id.* ¶¶ 6-26.

Trevizo appealed the trial court's denial of his petition for postconviction relief, arguing that the court incorrectly held that he was not denied 1) his right to

testify; 2) his right to a jury trial; 3) his right to substitute his trial judge for cause; and 4) his right to effective assistance of counsel. Order on Postconviction Appeal ¶ 1. Trevizo also argued that the trial court erred by granting the State's motion to dismiss his claims that Judge Wojtecki was biased and should have recused himself; that there was prosecutorial misconduct; and that there was insufficient evidence to prove him guilty. *Id.* On May 29, 2012, the Appellate Court of Illinois affirmed the trial court's dismissal of Trevizo's postconviction petition, *id.*, for reasons that will be discussed in greater detail below.

Trevizo has now filed a federal habeas petition in this Court. R. 1, Habeas Pet. He raises six claims in his petition: 1) that he was denied his right to testify; 2) that he was denied his right to a trial by jury; 3) that he was denied his right to an impartial judge; 4) that he was denied his right to effective assistance of counsel; 5) that there was insufficient evidence to prove him guilty; and 6) that he was denied his right to meaningful access to the court and due process of law as a result of the appellate court's Order on Postconviction Appeal. *Id.* at 14-67, 81-109.[2] The State has asked this Court to deny Trevizo's petition without an evidentiary hearing, and to deny a certificate of appealability. R. 17, State's Answer at 1.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, a state petitioner seeking a writ of habeas corpus in federal

---

[2]Trevizo's numbering system in his 110-page habeas petition and memorandum of law is confusing, including letters in addition to numbers and starting over at the memorandum of law. *See* Habeas Pet. The petition's page numbers cited in this Opinion are references to the .pdf page number in Trevizo's combined habeas petition and memorandum of law (starting with page 1 and ending on page 110).

court must first exhaust remedies available in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks and citation omitted). The habeas petitioner must fully and fairly present federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Even if fairly presented, however, a federal court may not grant habeas relief unless the state court's decision was (1) contrary to, or (2) an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision would be an unreasonable application of clearly established federal law as determined by the United States Supreme Court if the habeas petitioner demonstrated that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 413. The test for reasonable application is objective, *see Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003), and "is a difficult standard to meet: 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion,'" *Jackson v. Frank*, 348 F.3d

658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

Finally, a state court's factual determinations must also be evaluated against the unreasonableness standard. 28 U.S.C. § 2254(d)(2). A state court's factual determinations are presumed correct, 28 U.S.C. § 2254(e)(1); therefore merely asserting that the state court committed error is not enough to overturn factual findings, *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003). Instead, the petitioner could show that the state court determined the facts despite clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Ward v. Sternes*, 334 F.3d at 704. Such a decision would be "by definition, so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable." *Ward v. Sternes*, 334 F.3d at 704 (citing *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997)) (internal quotations omitted).

### III. Analysis

Under AEDPA, the relevant decision for review is the decision of the last state court to rule on the merits of the petitioner's claims. *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). Here, this Court considers the Illinois Appellate Court's decision to affirm the trial court's denial of Trevizo's petition for postconviction relief. Order on Postconviction Appeal.

### A. Claims One and Two: Right to Testify and Right to a Jury Trial

Trevizo's first two claims are 1) that he was denied his right to testify; and 2) that he was denied his right to a jury trial. Habeas Pet. at 14, 81. Trevizo argues

that despite continuously telling his lawyer that Trevizo wanted to testify, his counsel refused to allow him to testify, and both counsel and the trial court failed to inform him that the decision to testify was his to make. *Id.* at 15-16. Similarly, Trevizo argues that the trial court and his counsel failed to adequately inform him of his right to a trial by jury. *Id.* at 26-34.

As the Illinois Appellate Court noted, however, the trial court informed Trevizo of his right to testify and his right to a jury trial during his May 16, 2001 arraignment. Order on Postconviction Appeal ¶ 4. And during Trevizo's postconviction evidentiary hearing, Trevizo acknowledged that the trial court made these admonishments and, moreover, that he understood these rights. *Id.* ¶ 15. Thus the record readily supports the Illinois Appellate Court's determination that the trial court did not fail to inform Trevizo of his right to testify; this conclusion is based on a reasonable view of the facts. *See* 28 U.S.C. § 2254(d)(2).

As for Trevizo's allegations that his counsel refused to allow him to testify or otherwise failed to inform him that the decisions to testify or choose a jury trial were his to make, these same allegations were also considered during Trevizo's postconviction evidentiary hearing. *Id.* ¶¶ 12-17. In this hearing, the state trial court considered the conflicting testimony of Trevizo, Trevizo's family members, and Trevizo's attorneys. *Id.* ¶¶ 28-29. After consideration, the court credited the testimony of Trevizo's attorneys that they did not prevent Trevizo from testifying and, moreover, that they did inform him that he could choose trial by jury. *Id.* The

Illinois Appellate Court in turn affirmed the trial court's determination of the witnesses' credibility. *Id.* ¶ 29.

In his habeas petition, Trevizo does not offer any new evidence to rebut the trial court's credibility determinations, instead relying on evidence that was already considered during the evidentiary hearing, Habeas Pet. at 14-18: Trevizo points to the record established during his postconviction evidentiary hearing to argue that the record offers "clear and convincing evidence" that he was denied his right to testify and his right to a jury trial. *Id.* at 23-25, 32-34. The record does not come close to requiring the overturning of the state court's witness-credibility finding. The Supreme Court has held that federal habeas review is not the correct avenue for reevaluating credibility determinations such as those at issue here. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Because Trevizo has pointed to no new evidence on which this Court may rely in reviewing his claims, he fails to meet his burden of producing "clear and convincing evidence" to overturn the state court's factual determination that the trial court and Trevizo's attorneys adequately informed Trevizo of his right to testify. 28 U.S.C. § 2254(e). Trevizo is not entitled to habeas relief based on his claims that he was denied his right to testify or his right to a trial by jury.

## B. Claim Three: Right to an Impartial Judge

Trevizo's third claim is that he was denied his right to an impartial judge. Trevizo makes two main arguments to show that his right to an impartial judge was violated: 1) the trial judge should have recused himself *sua sponte* due to bias demonstrated by a series of erroneous rulings; and 2) his counsel failed to inform him of his right to substitute the trial judge for cause. Habeas Pet. at 36-46, 97-100.

The Court begins with Trevizo's claim that the judge for his bench trial, Judge Wojtecki, was biased. In support of this argument, Trevizo sets forth, for the first time, a list of allegedly erroneous rulings made by Judge Wojtecki, spanning seven full pages of Trevizo's petition. *Id.* at 38-44. But this new list of allegations has been procedurally defaulted as grounds for the judicial-bias claim. Habeas petitioners may only raise a federal claim for relief if the claim has been "fairly present[ed] to all levels of the state judiciary" which requires "articulating the point in such a way that a judge could grasp both its substance and its foundation in federal law." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006) (citing *Baldwin v. Reese*, 541 U.S. 27 (2004)). Trevizo failed to provide this detailed list of allegedly erroneous rulings in his postconviction petition. R. 18-9, Exh. I, Pet'r's Br. on Postconviction Appeal at 48-51. Instead, to support his claim of Judge Wojtecki's bias to the Illinois courts, Trevizo made only a brief passing reference to Judge Wojtecki's disclosures during the August 8, 2001 colloquy described above. *Id.* at 49 (describing Judge Wojtecki's remarks about being a public defender, Judge Wojtecki's friendship with Trevizo's counsel, Breen, and the state prosecutor cat-

sitting for Judge Wojtecki). During the evidentiary hearing itself, Trevizo actually admitted during cross-examination that the trial court did not make any pretrial rulings that adversely affected him. Order on Postconviction Appeal ¶ 14. Then, in Trevizo's postconviction petition for leave of appeal (PLA), he again failed to provide the detailed list of allegedly erroneous rulings. R. 18-13, Exh. M, Postconviction PLA at 11-12. Thus, Trevizo has not fairly presented his allegations that Judge Wojtecki made a series of erroneous rulings to all levels of the Illinois state courts. *Lockheart*, 443 F.3d at 929.

Trevizo also argues that his right to an impartial judge was violated by his counsel, who allegedly failed to inform him of his right to substitute Judge Wojtecki for cause. Like Trevizo's claimed violations of his rights to testify and trial by jury, this argument was also considered by the state trial court during Trevizo's postconviction evidentiary hearing. Order on Postconviction Appeal ¶¶ 14, 16-18. And just as with his first two claims, after hearing testimony from Trevizo, his family, and his attorneys, the trial court determined that Trevizo was not credible in contending that his counsel misinformed him of his right to substitute Judge Wojtecki for cause, and that he had not been substantially deprived of his constitutional right to substitute Judge Wojtecki by his attorneys. *Id.* ¶ 18. Because habeas review does not allow federal courts to "redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them," *Lonberger*, 459 U.S. at 434, this Court must affirm the appellate court's holding that Trevizo was not credible, Order on Postconviction Appeal ¶ 18. Trevizo is not

entitled to habeas relief based on his third claim that he was denied his right to an impartial judge.

### C. Claim Four: Right to Effective Assistance of Counsel

Trevizo's fourth claim is that he was denied effective assistance of counsel. Habeas Pet. at 47-53, 101. In support of this argument, Trevizo repeats his first three habeas-petition claims that his counsel failed to adequately inform him of his right to testify, his right to a jury trial, and his right to substitute Judge Wojtecki for cause. *Id.* Additionally, Trevizo argues that his counsel was ineffective for failing to call his father as a witness because his father could have testified that he saw another suspect driving in the neighborhood twice in the week before Plut's murder. *Id.* at 49, 101. The Illinois Appellate Court correctly identified the two-prong test for ineffective assistance of counsel mandated by *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, Trevizo must be able to prove not merely that his counsel's performance was deficient and that prejudice resulted from his counsel's deficient performance, *id.* at 687-88, but also that the Illinois Appellate Court's determination to the contrary was unreasonable, *see Lockyer*, 538 U.S. at 75-76.

As previously discussed, the Court has already held that Trevizo failed to show clear and convincing evidence that his rights to testify, to a jury trial, and to substitute Judge Wojtecki were violated. This Court concludes that it follows from this discussion, and from the trial court's unrebutted credibility determinations, that the Illinois Appellate Court reasonably applied *Strickland* in holding that Trevizo failed to show deficiency of performance or resulting prejudice with respect

to his rights to testify, to a jury trial, and to substitute the judge for cause. Order on Postconviction Appeal at 44-46.

As for Trevizo's claim that his counsel was ineffective for failing to call his father as a witness, the Illinois Appellate Court reasonably applied the *Strickland* test to determine that it was a reasonable defense strategy for Trevizo's counsel to decide not to call Trevizo's father as a witness. *Id.* ¶¶ 46, 47. As the Illinois Appellate Court recognized, Trevizo's father's testimony would *not* have shown that David Hir (whom Trevizo suggested at trial was the actual guilty culprit) was in the area of Plut on the night of the murder—only during the week of the murder. *Id.* ¶ 47. Given that Hir was Plut's boyfriend in the weeks before the murder (and therefore there is a possible innocent explanation for his appearance at her house late at night in the previous week), *id.* ¶ 41, Trevizo's father's testimony is far from a smoking gun—and would have only been of limited value to Trevizo. The Seventh Circuit has held that "it is well established that our scrutiny of counsel's trial strategy is to be deferential and that we do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010) (citing *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir.2009)); *Rodriguez v. United States*, 286 F.3d 972, 986 (7th Cir. 2002)). Because it was reasonable for Trevizo's counsel to determine that Trevizo's father would not have offered any additional evidence linking another suspect to Plut's death, his counsel's failure to call Trevizo's father as a witness does not constitute deficient performance, and in any event, did not result in prejudice.

The Illinois Appellate Court's conclusion was consistent with this analysis and, therefore, is not an unreasonable application of *Strickland*.[3] Trevizo is not entitled to habeas relief based on his fourth claim that he was denied his right to effective assistance of counsel.

## D. Claim Five: Insufficient Evidence

In his fifth claim, Trevizo asserts that the evidence was insufficient to support his conviction. Habeas Pet. at 55-62, 102-106. Trevizo argues now for the first time that much of the evidence presented by the State during his trial consisted of false testimony. *Id.* As previously discussed, however, new claims that have not been "fairly present[ed] to all levels of the state judiciary" are procedurally defaulted and cannot be considered on federal habeas review. *Lockheart*, 443 F.3d at 929. Therefore the Court can only review the more general claim that Trevizo raised below in his direct appeal: that the evidence presented was insufficient to prove Trevizo's guilt beyond a reasonable doubt. Pet'r's Br. on Direct Appeal at 46-66. On his direct appeal, Trevizo asserted that no reasonable trier of fact could have found that the evidence presented at trial established the essential elements of the crime with which he was charged. *Id.* In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does

---

[3]It is also worth noting here that after considering the testimony of Trevizo's attorneys during the postconviction evidentiary hearing, the trial court concluded that Trevizo received "excellent representation at trial." Order Denying Postconviction Pet. ¶ 26.

not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Here, the Illinois Appellate Court applied the correct rule in considering "whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Order on Direct Appeal at 22 (parroting *Jackson v. Virginia*, 443 U.S. at 319). Moreover, the Illinois Appellate Court's application of *Jackson* in determining that there was sufficient evidence to convict Trevizo was not unreasonable. *See Lockyer*, 538 U.S. at 75-76. As aptly summarized by the appellate court:

> Given evidence of defendant's opportunity to commit the crime, his proximity in time and location to the scene of the crime, his knowledge of an important and undisclosed detail concerning the crime, his misstatements to an investigating police officer, and the presence of his toe prints upon a vacuum spotted with the victim's blood and stuffed with a bloody sock, we believe that a rational trier of fact could have concluded beyond a reasonable doubt that defendant was guilty of murdering the victim.

*Id.* at 25. The Court agrees with the Illinois Appellate Court that all of the evidence taken together could support a reasonable inference that Trevizo was guilty of committing Plut's murder. Trevizo is not entitled to habeas relief based on his fifth claim that he was convicted despite insufficient evidence.

### E. Claim Six: Right to Meaningful Access to the Court and Due Process

Trevizo's final claim—that he was denied meaningful access to the Appellate Court of Illinois and was deprived of his right to Due Process—does not entitle him to habeas relief under AEDPA. This final claim is comprised of several underlying

substantive issues: Trevizo claims that (1) the Appellate Court failed to address his claims and supporting authorities; (2) the Appellate Court's factual determinations are rebutted by clear and convincing evidence; (3) the Appellate Court's decision clearly violates 28 U.S.C. § 2254(d)(1-2)[4]; and (4) the Appellate Court's decision merely "rubber-stamped" the trial court's denial of his postconviction petition. Habeas Pet. at 63-67, 106-09.

First, Trevizo asserts that the Appellate Court failed to address the arguments raised in his *pro se* petition. He fails, however, to specifically identify which arguments the Appellate Court did not address. And, as has been discussed, this Court holds that the Illinois Appellate Court's decision reasonably and adequately considered Trevizo's preserved claims, and applied the correct law in resolving these claims. *See* 28 U.S.C. § 2254(d). Second, Trevizo claims that the Appellate Court's factual determinations are rebutted by clear and convincing evidence. Habeas Pet. at 63-67. But this is not an independent ground for habeas relief. Regardless, as has been discussed, this Court holds that the Illinois Appellate Court's factual determinations are not rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, Trevizo claims that the Illinois Appellate Court was merely "rubber-stamp[ing]" the trial court's denial of his postconviction petition. Habeas Pet. at 106-09. But this, too, also has been addressed in this Court's analysis of whether or not the Appellate Court's decision is reasonable under

---

[4]The majority of this Opinion is dedicated to a discussion of whether the Illinois Appellate Court violated 28 U.S.C. § 2254(d)(1-2). (It did not.)

AEDPA. The Illinois Appellate Court appropriately considered and deferred to the determinations of the trial court in evaluating Trevizo's collateral appeal.

Trevizo's Claim Six essentially addresses whether or not the reasoning of the Illinois Appellate Court's decision was valid under AEDPA. For the reasons already described above, this Court has already concluded that the Illinois Appellate Court's decision was not unreasonable under AEDPA.

### F. Other claims for relief

In each of Trevizo's six claims discussed above, Trevizo seeks "a new trial, and other requested relief with granting of [the habeas] writ." Habeas Pet. at 14, 26, 36, 47, 55, 63. For the reasons discussed, this Court concludes that Trevizo is not entitled to a new trial. But for the sake of completeness, the Court considers here whether it is appropriate to grant Trevizo an evidentiary hearing.

The Supreme Court has held that in deciding the appropriateness of an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Due to the narrow standard of review prescribed by AEDPA, however, "if the [state] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Here, Trevizo does not make any new factual allegations. *See generally*, Habeas Pet. (arguing that the state appellate court's findings are controverted by

clear and convincing evidence already on the record). Trevizo, instead, relies on facts already developed in the record at trial and during the post-conviction evidentiary hearing. *Id.* And, as previously discussed, this developed record refutes Trevizo's factual allegations. There is no indication that an evidentiary hearing would enable Trevizo to prove the petition's factual allegations, or that those allegations would entitle Trevizo to habeas relief. *Schriro*, 550 U.S. at 474. As a result, it is not appropriate to grant Trevizo an evidentiary hearing.

## IV. Conclusion

For the reasons discussed above, Trevizo's habeas petition [R. 1] is denied. If Trevizo wishes to appeal this denial of his habeas petition, he must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the circuit justice or judge first issues the certificate. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted). For the reasons discussed above, Trevizo has not made a substantial showing of the denial of a constitutional right; reasonable jurists

would not debate whether the challenges in his habeas petition should have been resolved differently or determine that Trevizo deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The state court's thorough decision on all of Trevizo's claims was well within the deference owed to state courts under AEDPA. This Court therefore declines to issue a certificate of appealability.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: August 15, 2014